IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                   CRIMINAL ACTION NO. 2:09-cr-00222-11

MICHAEL LLOYD STEVENS,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Michael Lloyd Stevens's Motion for a New Trial [Docket 2146], filed on August 13, 2010. The Government filed its Response [Docket 2151] on August 20, 2010. Defendant's motion is now ripe for adjudication.

*I. BACKGROUND AND PROCEDURAL HISTORY*

Defendant Michel Lloyd Stevens is one of fifty-five members and associates of the Pagans Motorcycle Club (PMC) charged in a sweeping forty-four count indictment. A pared-down twenty-nine count superseding indictment was returned on February 2, 2010. Defendant is charged in Count Four of the superseding indictment, which charges him with conspiring to retaliate against a witness in violation of 18 U.S.C. § 1513(f) and § 1513(b)(2). Shortly after the return of the superseding indictment, Defendant and the Government reached a plea agreement. The parties filed a joint memorandum in support of the factual basis for Defendant's guilty plea on April 9, 2010 [Docket 1515]. On June 10, 2010, the Court held a guilty plea hearing, at which time the defendant indicated that he no longer wished to enter a plea of guilty. Defendant's case was tried before a jury on July

22 and 23, 2010, which resulted in a hung jury and a mistrial. Defendant was again tried before a jury on July 29 and 30, 2010, which produced a guilty verdict.

## II.  LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where the motion challenges the weight of the evidence, a court has much broader discretion than when ruling on a motion for judgment of acquittal. *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). Thus, a court is not required to view the evidence in the light most favorable to the Government, and it may assess the credibility of witnesses as it sees fit. *Id.* "When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial." *Id.*

## III.  ANALYSIS

### A.  *Admissibility of Stipulation of Facts*

Defendant's primary contention is that the Court impermissibly admitted into evidence the stipulation of facts that was attached to his plea agreement with the Government. In essence, the Defendant is asking the Court to reconsider its prior evidentiary ruling on this issue. The Court declines such reconsideration and affirms the admission of Defendant's stipulation during the Government's case-in-chief.

Federal Rule of Evidence 410 restricts the admissibility of a withdrawn guilty plea as well as "any statement made in the course of plea discussions." Fed. R. Evid. 410(4). However, absent fraud, coercion, or "some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of [Rule 410] is valid and enforceable." *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995). Despite this broad language,

Defendant correctly points out that neither the *Mezzanatto* decision—which dealt with a Rule 410 waiver for impeachment purposes—nor any decision of the Fourth Circuit has held that a Defendant's Rule 410 waiver permits the introduction of his plea statements in the Government's case-in-chief. Nonetheless, the Supreme Court's discussion and reasoning in *Mezzanatto*, as well as precedent from other circuits on this issue, assure the Court that introduction of the Defendant's stipulation of facts in the Government's case-in-chief was permissible. As the Fifth Circuit recently held:

> Now presented with a case-in-chief waiver . . . we can find no convincing reason for not extending *Mezzanatto*'s rationale to this case. Justice Thomas, writing for the *Mezzanatto* majority, set forth a framework for analyzing plea-statement waiver [sic]. He first discerned a "background presumption that legal rights generally, and evidentiary provisions specifically, are subject to waiver by voluntary agreement of the parties." Thus, without affirmative indication that Congress intended to proscribe waiver of statutory protections, including evidentiary rules, voluntary agreements to waive these protections are presumptively enforceable. As for [Rule 410], Justice Thomas found no indication of congressional disfavor towards waiver, either in the rules' text or in their attendant Advisory Committee's Notes. Against this backdrop, Justice Thomas then explained that courts should examine the public policy justifications, if any, for departing from the norm.

*United States v. Sylvester*, 583 F.3d 285, 289-90 (5th Cir. 2009) (internal citations and footnotes omitted); *see also United States v. Burch*, 156 F.3d 1315, 1320-21 (D.C. Cir. 1998) (similar summary of *Mezzanatto* framework).

The *Mezzanatto* Court's finding that Congress did not intend to proscribe waiver of evidentiary rules applies with equal force to this case. Rule 410 does not distinguish between using plea statements for rebuttal purposes or in the government's case-in-chief, and the *Mezzanatto* Court did not observe such a distinction anywhere in the Federal Rules of Evidence or the Advisory Committee's Notes. Instead, Justice Thomas, joined by six Justices, reached the broader conclusion that Congress expressed no disfavor toward the waiver of Rule 410. *Mezzanatto*, 513 U.S. at 203-04 ("Because [Rule 410] was enacted against a background presumption that legal rights, and

evidentiary provisions specifically, are subject to waiver by voluntary agreement of the parties, we will not interpret Congress' silence as an implicit rejection of waivability.").

Finding no congressional intent to forbid waiver of Rule 410's protections, the *Mezzanatto* Court turned to matters of public policy, specifically mentioning and rejecting three considerations in its analysis. This Court follows the Supreme Court's lead.

First, the *Mezzanatto* Court noted that some evidentiary provisions are "so fundamental to the reliability of the fact-finding process that they may never be waived." *Id.* at 204 (citing *United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985) ("[I]f the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent.")). The Court ultimately concluded, however, that enforcing Rule 410 waivers would not diminish the fact-finding process, stating that "admission of plea agreements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts." *Id.* While the waiver at issue in Defendant's case encompasses use of plea statements in the Government's case-in-chief, and indeed the Government so used Defendant's stipulation, such use does not diminish the fact-finding process. As the Fifth Circuit pointed out "to ignore relevant evidence of culpability simply because that evidence was discovered during the course of plea negotiations would arguably *undermine* the truth-seeking function of our criminal justice system." *Sylvester*, 583 F.3d at 294 (emphasis in original). The Court agrees and adopts the Fifth Circuit's reasoning.

Second, the *Mezzanatto* Court acknowledged that Rule 410 waivers may, in some circumstances, discourage negotiation between the Government and defendants in the first place. 513 U.S. at 207. However, the waiver at issue in this case was not a condition of entering negotiations; it was a bargained-for provision of the consensual agreement the parties reached from those

negotiations. Defendant was fully protected by Rule 410 during negotiations with the Government, and as such, it is difficult to see how a waiver in the final agreement in any way threatens candid and voluntary plea discussion.

Third and finally, the *Mezzanatto* Court noted that the disparity of bargaining power between the prosecutor and the defendant in many criminal cases may militate against enforcing evidentiary waivers. *See id.* at 209. In dismissing this policy argument, the Court stated "[t]he mere potential for abuse of prosecutorial bargaining power is an insufficient basis for foreclosing negotiation altogether." *Id.* at 210. No actual abuse is cited by Defendant in this case, and Defendant's motion does not cite fraud or coercion as a reason he entered the plea agreement or signed the stipulation of facts. Indeed, the plea agreement signed by Defendant states explicitly that his waiver of Rule 410 is made "knowingly and voluntarily." Thus, no policy reasons prohibit the Court from enforcing Defendant's Rule 410 waiver and admitting the stipulation of facts into evidence in the Government's case-in-chief.

*B. Voluntariness*

Defendant also urges the Court to reject the stipulation of facts because it was never formally accepted by the Court. Whether the Court accepts a plea agreement or not, it is to be interpreted according to contract law and each party should receive the benefit of its bargain. *See United States v. Dews*, 551 F.3d 204, 214 (4th Cir. 2008) ("A plea agreement is a contract between the parties and is binding on them according to its terms."). Furthermore, the waiver at issue in *Mezzanatto* was not part of a formal plea agreement at all, much less one accepted by the court in that case.[1] Nonetheless,

---

[1] The waiver in *Mezzanatto* was an prerequisite to entering plea negotiations in the first place. *See* 513 U.S. at 198.

the Supreme Court upheld the enforcement of that waiver. Accordingly, because the waiver in this case was entered into knowingly and voluntarily, it will be enforced.

The Defendant also argues that "[i]t was a violation of substantive due process to permit the government to meet their burden by the introduction of a stipulation of facts . . . because the elements which the government must prove have changed since the time the defendant signed the stipulation." (Docket 2146 at 2.) This assertion refers to the Court's June 3, 2010, memorandum opinion, in which the Court noted an outstanding question regarding the scienter element of 18 U.S.C. § 1513, the statute Defendant is accused of violating. *See United States v. Barbeito*, No. 2:09-cr-222, 2010 WL 2243878, at *42 (S.D. W. Va. June 3, 2010). The uncertainty in that statute is whether the Government must prove that Defendant *knew* the intended victim communicated with *federal* law enforcement as opposed to state, local, or foreign law enforcement. In the June 3 opinion, the Court did not, as Defendant suggests, hold knowledge of federal involvement to be an element of the crime. Instead, it was noted that the Government "elected to err on the side of caution" by "represent[ing] that [it] intends to prove that Defendants were aware of the involvement of federal authorities." The Court notes that, in light of the fact that the Government's only evidence at trial directly showing Defendant's knowledge of *federal* involvement was his stipulation of facts, it is at least possible that the Government's representation on this point was made precisely because Defendant affirmatively conveyed such knowledge in the final plea agreement reached by the parties and executed in March 2010. Furthermore, regardless of any alteration in the elements of the crime resulting from the Court's June 3 memorandum opinion, the Defendant agreed to the facts contained in the stipulation attached to the plea agreement. The only discernable prejudice to Defendant is that he possibly did not scrutinize the portion of the stipulation of facts relating to his knowledge of the federal character

of law enforcement involved as closely as he otherwise would have. However, whether his knowledge of the federal character of law enforcement was construed as an element of § 1513 or not, the factual statements attached to the plea agreement were unconditionally adopted by Defendant. The Court sees no reason why Defendant should not be held to those facts he adopted in the plea agreement with the Government. The fact is that Defendant willingly agreed to this now important fact when it was, arguably, less important. His attempt to back out of that fact now does little to enhance the credibility of his contentions.

The plea agreement itself states in clear terms that Defendant understands and voluntarily agrees to the terms of the plea agreement, including the stipulation of facts. Defendant's signature immediately follows that proclamation. Furthermore, Defendant signed the plea agreement by his own volition in the presence of counsel. On this inquiry, there is no evidence that the plea agreement was entered unknowingly or involuntarily, nor any evidence that it was the product of fraud or coercion. The arguments Defendant raises in his motion do little to establish otherwise. Contrary to the tenor of Defendant's challenge, the facts as Defendant swore to them in the plea agreement carry no less weight simply because the Government offered to prove an additional element of the crime at trial.

    C.    *Sufficiency of Evidence*

Although not explicitly argued, Defendant's Motion for New Trial clearly implicates the sufficiency of the evidence supporting his conviction.[2] The Court perceives this argument to challenge the sufficiency of the evidence as it relates to Defendant's knowledge that Vincent Morris

---

[2] *See* Docket 2146 at 2 ("It is likely that the case would not have gone to the jury without [the stipulation of facts].").

was cooperating with federal law enforcement (as opposed to state or local law enforcement). The only direct evidence that Defendant had knowledge that Morris was communicating with federal law enforcement comes from his stipulation of facts.[3] The Court has already held that the stipulation of facts was properly admitted during the course of the Government's case-in-chief. The only remaining consideration is whether the stipulation, which was largely uncorroborated on the element of Defendant's knowledge that federal law enforcement was involved, can maintain a conviction.

Defendants who challenge the sufficiency of the evidence to sustain their conviction "must overcome a heavy burden." *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995). A court must uphold a jury's verdict if there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942). "[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Burgos*, 94 F.3d at 862.

"It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963). In order to sufficiently corroborate a defendant's statements, the Government must "introduce substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement." *Opper v. United States*, 348 U.S. 84, 93 (1954). However, the Government is not required to introduce

---

[3] In its opposition memorandum, the Government lists other evidence that demonstrates such knowledge by other members of the PMC and LRMC. However, this defendant was not a member of the PMC or any support club, although he was convicted of a conspiracy with some such club members, and there was evidence that he associated with members of the Huntington chapter of the LRMC, of which his brother, Richard Stevens, was president. Thus, as to this defendant this evidence is circumstantial, at best.

corroborative evidence that establishes every element of the crime charged beyond a reasonable doubt. *See Smith v. United States*, 348 U.S. 147, 156 (1954) ("[C]orroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty."). Instead, "extrinsic proof [i]s sufficient which merely fortifies the truth of the confession, without independently establishing the crime charged." *United States v. Abu Ali*, 528 F.3d 210, 237 (4th Cir. 2008) (quoting *Wong Sun*, 371 U.S. at 489). "All that is required . . . is that there be sufficient corroboration of the confession (or admission) to indicate that it is trustworthy, but the corroborating evidence need not, itself, establish every element of the offense." *United States v. Waller*, 326 F.2d 314, 315 (4th Cir. 1963) (per curiam). Thus, the government must "establish each element of an offense but may do so 'by independent evidence or corroborated admissions,' and one 'mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense through the statements of the accused.'" *Abu Ali*, 528 F.3d at 235 (quoting *Smith*, 348 U.S. at 156).

In order to secure a conviction under Count Four, the Government was required to prove the following elements: (1) there was an agreement with one or more persons, tacit or express, to undertake to violate 18 U.S.C. § 1513(b)(2); (2) the accused willfully joined the conspiracy; and (3) the accused's intent was to accomplish the criminal purpose of the conspiracy. To establish the object of the conspiracy element, the Government was required to additionally prove that the agreement, if carried out, would entail (1) that a person would engage in conduct that causes any person bodily injury or threatens any person with bodily injury; (2) that this conduct would be performed knowingly, with the specific intent to retaliate against a witness for information the

witness divulged to law enforcement authorities about a federal offense; and (3) that the official to whom the witness divulged the information was a federal agent or otherwise working on behalf of the federal government in some capacity. As previously stated, the Government additionally offered to prove that the Defendant had knowledge that the officials to whom Morris divulged information were federal agents or working on behalf of the federal government. Thus, the Court so instructed the jury, in spite of refusing to so hold in its June 3, 2010, opinion. It is on this final issue of proof that Defendant apparently contends evidence was lacking.[4]

Defendant's stipulation of facts was properly admitted into evidence and considered by the jury. Although the stipulation was the only direct evidence that Defendant knew that Vincent Morris had cooperated with federal authorities, the jury could have found that other evidence so corroborated the remainder of the stipulation of facts that it was to be believed in its entirety. As the Supreme Court and the Fourth Circuit have instructed, it is sufficient for corroborative evidence merely to support or tend to establish the trustworthiness of an admission. *See Opper*, 348 U.S. at 158; *Abu Ali*, 528 F.3d at 235. A reasonable finder of fact could accept the stipulation of facts, coupled with other evidence, as adequate and sufficient to support a conclusion of Defendant's guilt beyond a reasonable

---

[4] The Government, in its responsive memorandum, offers several pieces of evidence from the trial purporting to satisfy its burden. The most probative of these evidentiary recitations are (1) Special Agent Cunningham's testimony that "defendant told him that he knew that Mr. Morris had cooperated with law enforcement because he had read about it in a prison newsletter . . . where Mr. Morris was listed as a rat" and (2) a recording of Defendant remarking about how Mr. Morris had "done Pauley," that Defendant "love[d] Pauley to death," and that "a snitch is the worst thing that's walkin'." The Government also cites evidence that other members of the PMC were aware that Morris had cooperated with federal authorities. Additionally, the Court notes that Defendant knew that Morris was serving time on a federal bank robbery charge, as he was housed in a federal prison at which Defendant worked. Defendant knew that Pauley Hysell was incarcerated for the same crime at FCI Beckley. These pieces of evidence may or may not independently establish that Defendant had knowledge that Morris had cooperated with federal, as opposed to state, authorities.

doubt. *See Burgos*, 94 F.3d at 862. Accordingly, the evidence of Defendant's knowledge was sufficient.

## IV. CONCLUSION

Based on the foregoing analysis, Defendant's Motion for a New Trial [Docket 2146] is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: December 21, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE